UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
F. JAMES DATRI, JR.,　　　　　　　　　　　　　**MEMORANDUM**
　　　　　　　　　　　　　　　　　　　　　　　**AND ORDER**
　　　　　　　　　　　Plaintiff,　　　　　　　04-CV-3497 (DRH)(ETB)

　　-v.-

THE INCORPORATED VILLAGE OF
BELLPORT, et al.,

　　　　　　　　　　　Defendants.
---------------------------------------------------------

**Appearances:**

**For the Plaintiff:**
**Edward M. Gould, Esq.**
374 Islip Avenue, Suite 104
Islip, New York 11751

**For the Defendants:**
**Miranda & Sokoloff, LLP**
240 Mineola Boulevard
Mineola, New York 11501
By: Brian S. Sokoloff, Esq.
　　Adam I. Kleinberg, Esq.

**HURLEY, District Judge:**

　　　　Plaintiff F. James Datri ("Plaintiff") brings this suit alleging various claims pursuant to 42 U.S.C. §§ 1983 ("Section 1983"), 1985 ("Section 1985"), and New York State law against twenty defendants, including the Incorporated Village of Bellport (the "Village" or "Bellport") and Donald Mullins ("Mullins") (collectively, "Defendants").  Essentially, Plaintiff claims that Defendants improperly revoked his berthing license and denied him the right to use Village recreational facilities.  Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted. Plaintiff is a resident of the hamlet of Brookhaven, New York, a non-incorporated area outside of the boundaries of the Village. Plaintiff owns a one-acre strip of land in the Village (the "Bellport property") upon which he has a small structure, sized approximately 14 feet by 30 feet, where Plaintiff keeps his boating supplies. The structure has no certificate of occupancy as a dwelling, and has no running water, electricity, or septic system. Plaintiff claims to occasionally sleep there during the summer months.

Prior to September 2003, Plaintiff kept a boat at the Village Marina in Bellport, pursuant to a licensing agreement. The berthing license or permit was good for one year and contained the following provision:

> 3) Permits may be revoked by the Village under the following conditions:
> . . . .
> e-If the use of the slip, in the opinion of the Village Board, affects the safety and welfare of the Village or its residents or the occupants of any other slip.

(Decl. of Adam I. Kleinberg, dated July 29, 2005 ("Kleinberg Decl."), Ex. C.)

On July 13, 2003, Plaintiff sailed his boat from the Village Marina to the floating dock at Ho-Hum Beach, Fire Island, which is also owned by the Village. Upon his arrival, Plaintiff observed a boat berthed at the Ho-Hum dock that, in his view, was taking up too much space. Although the parties dispute the specifics, Plaintiff allegedly got into an altercation with the owner of the boat, as well as with several other individuals who were present at the dock.

Thereafter, Plaintiff received written notice to appear before the Village Board on

July 29, 2003, to discuss his behavior at the Ho-Hum dock. Plaintiff appeared on that date and testified about the incident, as did two Village employees who were eyewitnesses to the altercation. By letter dated August 20, 2003, the Village Board informed Plaintiff that it had concluded that his conduct "was not only inappropriate and offensive but did threaten the use, safety and welfare of the Village employees, residents and boaters present at the Marina." (Kleinberg Decl. Ex. D.) Accordingly, the Board advised Plaintiff that his privileges to use the Village's recreational facilities, including the marina at Ho-Hum Beach, were revoked until December 31, 2004, and that he would lose his berthing permit. (*Id.*) The Village thereafter stayed its decision pending a further interview with defendant William Douglas Hodgson, the owner of the other boat involved in the altercation. By letter dated September 10, 2003, the Village advised Plaintiff that it would stand by its original decision. (*Id.* Ex. E.)

In 2004, the Village, after providing notice of the public hearing regarding the amendment, enacted section 23-3 of the Village Code, entitled "Resident," which provides as follows:

> A "Resident" shall in all cases be a natural person, and further defined as:
>
> 1. An owner of residential real property within the Village, and members of their household, who routinely use such property for sleeping purposes, and with the intention of using the premises as a primary or secondary dwelling and not as a guest or visitor and where such property is not rented to others in excess of 4 months per year.
>
> 2. A lessee or renter of residential real property within the Village, and members of their household, who routinely use such property for sleeping purposes, and with the intention of using the premises as a primary or secondary dwelling and not as a guest or visitor, for in excess of four months of the year and who have provided to the Village

>   Clerk an affidavit signed by the owner of the residential
>   real property acknowledging the rental or lease of such
>   property.

(*Id.* Ex. F.)

Section 23-1 of the Village Code, entitled "Purpose," sets forth the reasons for the enactment of section 23-3. Section 23-1 provides in pertinent part:

>   The Board finds that the recreational facilities and services
>   provided by the Village of Bellport are: (1) generally, in great
>   demand; and (2) have increased seasonal visitation in the Village
>   by persons who are, in part, attracted to the Village by the
>   availability of such facilities and services.
>
>   The Board further finds that the absence of a uniform
>   definition of who is authorized as a resident to use such facilities
>   and services has led to situations where use of the facilities and
>   services by persons not residing within the Village have deprived
>   bona fide Village residents of the use of said facilities or services.
>
>   Accordingly, it is the intent of the Village Board to establish a
>   uniform definition of the term 'Resident' as that term applies to the
>   use of Village recreational facilities and services; to provide for a
>   means of residency determination; and to set parameters on the use
>   of Village recreational facilities and services by persons who visit
>   the Village on a seasonal basis.

(*Id.*)

On March 26, 2004, Plaintiff filed the instant action asserting three federal causes of action, viz. (1) Defendants enforced the Bellport Village Code in a discriminatory fashion in violation of Plaintiff's constitutional rights pursuant to Sections 1983 and 1985; (2) Defendants interfered with Plaintiff's property and liberty interests in violation of Plaintiff's rights under the due process and equal protection clauses pursuant to Section 1983; and (3) Defendants engaged in a conspiracy to deprive Plaintiff of his rights under the due process, equal protection and privileges and immunities clauses pursuant to Section 1985. Discovery is closed and Defendants

4

have moved for summary judgment. For the reasons that follow, their motion is granted.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec.*

5

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

## II. Defendants' Motion for Summary Judgment is Granted

As a preliminary matter, the Court notes that Plaintiff's opposition papers -- a memorandum of law and a Rule 56.1 Statement -- contain no citations to the record, as is required, and fail to specifically controvert many of Defendants' assertions. Ultimately, as demonstrated below, such deficiencies prove fatal to Plaintiff's claims.

### A. *Plaintiff's Section 1983 Claims*

Plaintiff's Section 1983 claims arise out of two distinct events: (1) the revocation of Plaintiff's boating permit and the right to use Village recreational facilities; and (2) the Village's enactment of an amended definition of the term "resident." The Court will discuss them in turn.

#### 1. *The Village's Revocation of Plaintiff's Privileges*

Plaintiff alleges that Defendants deprived him of his property interests, viz. his interests in his berthing permit and in using the recreational facilities at Bellport, without due process of law in violation of the Fourteenth Amendment. Specifically, Plaintiff complains that although he received a letter to appear before the Village Board to discuss the July 13, 2006 incident, "[n]o notice about the impending meeting was sent to the Village public at large," "[t]he Village exclusively notified witness's favorable to [its] position," (Pl.'s Mem. at 2), and "[t]here was no indication to the plaintiff that he could or may, bring witnesses," (Pl.'s 56.1

Stmt. ¶ 20), all of which are procedural due process arguments. Plaintiff does not cite to any case law nor to any evidence in support of his position.

Before considering whether due process was lacking in this case, the Court must first consider whether Defendants deprived Plaintiff of a federally protectable property interest. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Walz v. Town of Smithtown*, 46 F.3d 162, 167-68 (2d Cir. 1995). It is only when such a right is established that the Court may turn to a discussion of whether there has been a deprivation of that right without due process. *See Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972). "In almost all cases, the existence of a federally protectable property right is an issue of law for the court." *Natale*, 170 F.3d at 263.

The touchstone of a deprivation of a property interest claim in this Circuit rests on whether the applicant had a "clear entitlement" under applicable state law to the approval sought from the government official or administrative body. *Walz*, 46 F.3d at 168. Plaintiff may meet his burden by demonstrating that "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Id.* (quoting *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir. 1985)). The determinative factor in analyzing a claim of entitlement is whether the issuing authority has discretion in deciding to issue the requested permit. If the issuing authority has discretion in deciding whether to issue a permit or license, the federal courts will not sit as a "superceding body" to the local administrative agency. *Natale,* 170 F.3d at 263; *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir. 1995).

Here, the Village Code vests considerable discretion in the Board to revoke a

berthing permit or deny an individual access to its recreational facilities if it finds that such individual affects the safety and welfare of the Village. Accordingly, Plaintiff cannot establish that he has a clear entitlement to either the permit or the right to use the recreational facilities and his due process claims are therefore dismissed. *See, e.g.*, *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (no protected property interest in variance where zoning regulations granted zoning board with discretionary approval powers); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) (landowners had no property interest in enforcement of zoning laws for adjacent property since municipal officials had broad discretion in determining whether to grant or deny building permit, site plan and variances); *RRI Realty Corp. v. Incorporated Vill. of Sothampton*, 870 F.2d 911, 918-19 (2d Cir. 1989) (no property interest existed in building permit since town officials had wide discretion to either grant or deny the permit); *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 213 (2d Cir.1987) (property owner's expectation of success in receiving planning board approval for his project did not give rise to a cognizable property right on account of the broad discretion that the zoning ordinance conferred on the planning board).

### 2. *The Village's Amendment Regarding the Term "Resident"*

Plaintiff argues that the 2004 enactment of section 23-3 of the Village Code, which amended the term "resident," violates his constitutional rights. Specifically, Plaintiff alleges:

> The Village [B]oard met to identify the term resident[] as one who owns residential real property as defined in [its] applicable zoning code. Residential real property[] is that for use or occupancy as a dwelling for sleeping purposes. The zoning code only permits sleeping in a dwelling which has running water, heat, septic system and electricity. Consequently, the legislation permanently excludes the plaintiff from frequenting Village public facilities and joining collateral associations.

(Pl.'s Mem. at 3.) Without a single legal or factual citation, Plaintiff claims that this legislation "violates the plaintiff's right to be free from bills of attainder and denies him equal protection per the 14th amendment of the United States Constitution [and] further acts to compromise the plaintiff's right of due process and freedom to associate." (*Id.* at 3-4.) Plaintiff also claims that

> The Village and it[s] individual members' conduct[] has had a disparate and discriminatory impact on the Plaintiff. In July of 2004 while at Village Hall, Chief Mullins effected an unlawful search and seizure of plaintiff's private briefcase. Without notice to plaintiff, Chief Mullins grabbed the brief[]case to view it[]s content. As such, the Village and it[]s individual members' conduct, has had a disparate and discriminatory impact on the Plaintiff.

(*Id.* at 4.)

Essentially, Plaintiff's claim boils down to the fact that he falls outside the Village's amended definition of a resident. Addressing Plaintiff's alleged constitutional violations seriatim, the Court first finds that Plaintiff has not established that the amendment violates the Constitution's prohibition on bills of attainder. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without . . . the protections of a judicial trial." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468 (1977). Because the instant legislation excludes as residents all people who do not routinely use their residential real property for sleeping purposes, it cannot be said to be specifically targeted at Plaintiff. *See Shenandoah v. Halbritter*, 366 F.3d 89, 92 (2d Cir. 2004) (finding that ordinance was not a bill of attainder where it applied "to all residents of the territory at issue, and cannot be said to single out any individuals"). Accordingly, Plaintiff cannot show a bill of attainder.

Second, Plaintiff has not established an equal protection violation. The Equal

Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause [thus] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

To the extent Plaintiff seeks to challenge the selective enforcement of the law against himself only, Plaintiff must show that: (1) he was selectively treated compared with others similarly situated; and (2) the selective treatment was based on impermissible considerations "such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted). Here, Plaintiff bases his equal protection claim on the bare assertion that Defendants have selectively enforced their residency requirement to Plaintiff's detriment. Plaintiff has failed to point to any evidence, however, which indicates that there are any similarly-situated individuals receiving different treatment for impermissible reasons. Accordingly, Plaintiff's "selective treatment" equal protection claim must fail.

To the extent Plaintiff asserts that the law unfairly discriminates against all individuals who no longer qualify as residents under the amendment, his claim similarly fails. The only "evidence" Plaintiff has proffered on this claim is his bare assertion that "[i]n response to document demands, the defendant[s] submit[ed] 13 names of individuals whose recreational use permits were denied as a result of re-defining the term resident." (Pl.'s Mem. at 8.) Plaintiff has not proffered any evidence, however, which would tend to show that in passing this law, the Village "distinguishe[d] between individuals based on unreasonable, arbitrary, or capricious

10

differences that are irrelevant to a legitimate government objective," the required showing for an equal protection claim. *Bernheim*, 79 F.3d at 323 (citations and internal quotation marks omitted). The Village, on the other hand, has proffered evidence which establishes that it passed this law in furtherance of a legitimate and substantial interest, i.e., ensuring that its resources are conserved and reserved for use by its residents. *See New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309 (2d Cir. 1994) (noting that summary judgment "standard is met where . . . a reasonable factfinder would conclude that the legislation was rationally related to a legitimate state interest. This standard does not require a showing that the legislation was the best means of promoting a legitimate state interest. Rather, the standard is met by a showing that the challenged legislation was a reasonable means of promoting the interest."). Accordingly, Plaintiff's equal protection claim cannot stand. *See id.* ("A defendant to a[n equal protection] claim . . . is entitled to summary judgment if he or she can show that there exists no factual dispute on the basis of which a reasonable factfinder could conclude that the challenged legislation was clearly arbitrary and unreasonable.").[1]

Plaintiff has also failed to establish that the amendment in any way violated his due process interests. In this regard, Plaintiff asserts that "[b]y altering the definition of the word 'residence' negatively to the plaintiff, he has been 'deprived' of a property interest under the Due

---

[1] To the extent Plaintiff's equal protection claim can be construed to challenge the amendment under the right to travel pursuant to the Privileges and Immunities Clause, which prohibits state laws that discriminate against out-of-state residents solely by virtue of their place of residency unless there is a compelling reason for the discrimination, Plaintiff lacks standing to assert such a claim as the Privileges and Immunities Clause is only available to "out-of-state" residents and not in-state residents who merely reside in another town. *See Stevenson v. Town of Oyster Bay*, No. 04 CV 4508, 2006 WL 1388434, at **4-5 (E.D.N.Y. May 23, 2006) (citing *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208 (1984)).

Process Clause of the United States and New York State Constitutions," (Pl.'s Mem. at 6), a substantive due process argument. *See Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 144 (2d Cir. 1994) ("The [due process] clause has been held to have a substantive component that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'") (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

For a substantive due process claim to survive summary judgment, a plaintiff must show both "(1) that he had a valid property interest in [using Village recreational facilities], and (2) that the defendants infringed that property interest in an arbitrary or irrational manner." *Harlan Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001). Plaintiff has not made a showing as to either of these requirements.

As an initial matter, Plaintiff has not established, consistent with above, that he has a "clear entitlement" to use Village recreational facilities. Moreover, even if Plaintiff had a cognizable property right, the Village did not deprive Plaintiff of any such right in an arbitrary manner. As discussed above, the amendments in this case were rationally related to a legitimate state interest -- the conservation of resources for Village residents. As a result, the Village's actions cannot be said to be arbitrary as a matter of law. *See Harlan Assocs.*, 273 F.3d at 505.[2]

---

[2] Finally, the Court notes that Plaintiff's vague and conclusory allegations regarding Mullins' alleged unlawful search and seizure of Plaintiff's private briefcase do not rise to the level of a constitutional violation. Although Plaintiff cites to *no* evidence in support of his claim, Defendants refer the Court to Plaintiff's deposition testimony wherein Plaintiff testified that he placed his bag upon a counter which separated him from Mullins, who was assisting Plaintiff with a request pursuant to New York's Freedom of Information Law. (Pl.'s Dep. dated May 26, 2005 at 107-11.) At some point thereafter, Plaintiff claimed that Mullins reached for the bag but was unable to pull it away as Plaintiff pushed down on the bag and closed it. (*Id.* at 113-15.) Plaintiff further alleged that Mullins stated that he wanted to see if Plaintiff had a tape recorder in his bag, (*id.* at 115-16), that Mullins did not try to take Plaintiff's bag again, (*id.* at 116), and that Mullins was unable to view the contents of the bag. (*Id.*) The Court finds that Plaintiff's

### B. *Plaintiff's Section 1985 Claims*

To state a cause of action under § 1985(3), Plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988). "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas*, 165 F.3d at 146 (citations and internal quotation marks omitted).

The Court easily disposes of this claim because, other than Plaintiff's conclusory allegations of a conspiracy, Plaintiff has alleged no facts and presented no evidence that Defendants engaged in a conspiracy to violate his constitutional rights, much less that they acted with class-based discriminatory animus. Accordingly, Plaintiff's Section 1985 claims are dismissed.

### III. *Plaintiff's Remaining Claims are Dismissed*

The remaining claims in this case arise under state law. Having found that the allegations in the Complaint do not support federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, all state law claims are dismissed without prejudice to refiling in state court.

---

deposition testimony fails to raise even the specter of a Fourth Amendment violation.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED**

Dated: Central Islip, NY
August 17, 2006

/s_____
Denis R. Hurley,
United States District Judge